Battle, J.
 

 On the trial, several objections were made by the defendant, which are set out in his bill of exceptions, and' which we will proceed to consider.
 

 1. The defendant objected to the introduction by the plaintiff of a grant from Charles Eden, Christopher Gale, and others, to Tobias Knight, for three hundred and forty-five acres of land, lying in the precinct of Hyde, (now part of the County of Beaufort,) made on the 9th of September, A. D., 1716. A copy of this grant has been obtained from the Secretary of State, in whose office it was found deposited, and had been recently registered in the office of the register of Beaufort County. The objection is, that the persons who purported to make-file grant had no power to do so, and that it had not been properly proved and registered; at least, not in due time. The answer is found in what is called “The great deed of grant,” from, the Lords Proprietors of the province of Caro
 
 *136
 
 lina to Samuel Stephens, Governor of the County of Albe-marle, and to his councillors, bearing date May 1st, 1668, by which they granted “ full power and authority unto the said Governor and his successors, by and with the consent of the council or major part thereof, to issue grants for lands lying in the Coimty of Albemarle, to the inhabitants thereof, to be held upon the same terms and conditions upon which the inhabitants of Virginia held their lands.” See 2 Eev. Stat. 13. The grantors, in the present case, were the Governor and Council of the Province, at the time when the grant was issued, and the grant itself was recorded in a book now on file in the office of the Secretary of State. The grant was, by the provisions of the great deed, required to be registered, which, as far as we know, was not done; but by the last clause of the 24th section of the 42nd chapter of the Eevised Statutes, it Avas enacted that, “ it shall, and may be, lawful for any person to cause to be registered in the office of the register of the County where the land lies, any certified copy of a grant from the office of the Secretary of State, for the lands lying in such County; and such registration, duly made, shall have the same effect in law as if the original had been registered. There does not seem to be any limitation as to the time within which such copies must be registered, but if there be, it has been extended by the acts which are passed at eArery session of the General Assembly, for the purpose of allowing all such grants, deeds and conveyances, to be proved and registered, which have not heretofore been done so.
 

 2. The second objection was to the admissibility of the records of the proceedings for the partition of the lands of James Latham, among his heirs-at-law, because the feme plaintiff, who was one of the heirs, was not made a party to it; and further, because the return of their proceedings and the appropriations made by the commissioners, were not enrolled as required by 1 Eev. Stat., ch. 85, sec. 1, (Eev. Code, ch. 82, sec. 1.) The first part of the objection is clearly untenable. The wife of the plaintiff was not, indeed, made a party, but she is mentioned in the petition as one of the heirs among.
 
 *137
 
 whom the partition was prayed ; a share was allotted to her, and she and her husband have acquiesced in it ever since it was made in the year 1828, and now claim under it. It is too late for her, much less a stranger, to obj ect to it at this time. The other part of the objection is equally unfounded. The proceedings were enrolled when they were placed by the clerk among the records of his office, just as acts of the Legislature are enrolled when they are duly ratified and deposited in the office of the Secretary of State. They are not required to be recorded in “ proper books,” like wills, (Revised Statute, ch. 122, sec. 4; Revised Code, ch. 119, sec. 13,) nor in a “well-bound book,” like the returns of justices’ executions levied on land, (1 Rev. Stat., ch. 62, sec. 16 ; Rev. Code, ch. 62, sec. 17,) but simply to be enrolled ; that is, placed by the clerk of the Court among the records or rolls of his office. This will satisfy one meaning of the term “enrolled,” and as the proceedings are required to be '“registered” also, we can hardly suppose that the Legislature intended that they should be recorded in another book.
 

 3. The third objection was the introduction of the plot of the survey of the division of the lands among the heirs, because it did not purport on its face to have any connection Avith the partition made by the commissioners. It Avas registered with the other papers, and was found among them in the clerk’s office. A plot is referred to in the return of the commissioners as being “ herewith.” The one offered in evidence purports to be a survey of the lands of James Latham, dec’d., and the lands are divided into lots corresponding with the number of heirs. Under these circumstances, we think, the plot in question formed a part of the proceedings in the cause, and Avitli them was properly admitted in eA'idence by the presiding Judge. The case of
 
 Morrison
 
 v. Laughter, 2 Jones’ Rep. 354, cited by the defendant’s counsel, does not apply, because there the .petition did not refer to the deed in question, nor any deed as containing a more certain description.
 

 4. The fourth and last objection was to the charge of the
 
 *138
 
 Judge upon the question of damages. The defendant contended, that as, at the time when the writ issued, the trees which he had cut down had not been carried away, the plaintiffs were entitled to only nominal damages. The case states that the question of damages "was left to the jury to find the actual damages up to the bringing of the suit. Under tin’s instruction, the jury gave a verdict for seventy-five dollars, damages, the proof being that one hundred and eighty-two trees had been felled. As the damages were certainly more than nominal, we thought at first that the jury might have misunderstood the charge, and taken into consideration the carrying away of the trees, and that the charge was liable to objection for not being sufficiently explicit; upon reflection, we have come to a different conclusion. There was no testimony, so far as we can see, that the trees had been made into timber and carried off at all by the defendant; but if there were, the fact was called to the attention of the jury, that they were not so before the suit was brought, and then the jury were expressly told that the actual damages up to the bringing of the suit was the rule by which they were to be governed.
 
 We
 
 have no means of knowing that the cutting down simply of one hundred and eighty-two timber trees was not an actual damage to the plaintiff to the amount of seventy-five dollars, which is at the rate of- about forty cents per tree. In the absence of any such information, we must suppose that the verdict was correct, according to the instruction which the jury received. If there were any actual damage at all, the instruction was undoubtedly a proper one.
 

 There is no error, and the judgment must be affirmed.
 

 Pee Curiam. Judgment affirmed.